## TABULAR MATTER IN LEGAL ADVERTISING.

[Auglaize County Court of Common Pleas.]

W. J. Murray, *appellant,* v. Auglaize County, *appellee.*

*Publication of County Commissioners' Annual Reports—Tabular or Rule Work in Legal Advertising—Section 4366 Construed.*

1. Annual reports of county commissioners are "advertisements" within the meaning of Section 4366 Revised Statutes.

2. The test as to whether a publisher may charge fifty per cent. additional for matter contained in a legal advertisement is, whether this matter is set in tabular form, and not whether it falls within the changeable classification of such matter made by printers' unions for the purpose of fixing rates for composition.

3. Matter set up in the form of a table, with figures or words one under the other, so as to exhibit to the eye the information to be conveyed, and which contains two or more justifications, is tabular matter.

Mathers, J.

This matter comes into this court on appeal from the action of the county commissioners of Auglaize county in disallowing a bill of appellant for publishing in his newspaper the said commissioners' annual report for the year 1901.

The appellant charged for 264 squares of printed matter at the rate of $1.50 per square, while the commissioners allowed him but $1.00 per square. He seeks, by this appeal, a judgment for $396, instead of $264, the amount allowed him by the commissioners.

The prices authorized by law to be charged and paid for legal publications of this character are fixed by Sec. 4366 of the Revised Statues of Ohio, which reads as follows, viz.:

"Publishers of newspapers may charge and receive for publication of advertisements, notices and proclamations, the price or rate for which is not otherwise fixed by law, required to be published by any public officer of the state, or of a county, city, village, hamlet, township, school, benevolent or other public institution, or by a trustee, assignee, executor or administrator, the following sums, to-wit: For the first insertion, one dollar for each square, and for each additional insertion, authorized by law, or the person ordering the insertion, fifty cents for each square, fractional squares to be estimated at the same rate for space occupied, and in advertisements containing tabular or rule work, an additional sum of fifty per cent. may be charged in addition to the foregoing rate."

Evidence was received on the appeal to determine the character of the matter in question, for upon that must rest the determination of this appeal. If the commissioners' report, as published by appellant, is "tabular or rule work," then he is entitled to a judgment, otherwise the action of the commissioners must be affirmed.

A number of newspaper publishers and practical printers testified as to the meaning of the words "tabular or rule work," as understood and used in the printing trade, and with but one exception the witnesses all testified, in effect, that where matter required two or more justifications it was "tabular." Even those witnesses who testified in behalf of the commissioners said that two or more justifications made matter "tabular," and, while some expressed the opinion that the published report in question was not "tabular matter" yet that was an opinion with which other witnesses disagreed. Where experts disagree, a closer analysis of the facts in evidence is necessary in order to reach a satisfactory conclusion.

One of the witnesses for the commissioners was decidedly of the opinion that the published report in question was tabular matter, while another said it was matter which in the trade was matter only paid for as "one price matter," that is, as for "straight" matter, and referred to the scale of prices of the Chicago Typographical Union and the Lima Typographical Union.

While the Legislature, in fixing the price to be charged for such matter, may have been originally governed by considerations of cost to the publisher in having it set up, still it will readily be seen that is not the criterion by which the Legislature has authorized publishers to charge; so that it is entirely immaterial whether the matter in question is "one price" or "price and a half." The price charged by unions is one that may vary from time to time, while the rate allowed for this work is fixed by statute. The question, Is this "tabular matter"?, is the one to be determined and not whether, at this particular time, the unions may be charging "one price" or "price and a half," for the composition of matter like it, though it may throw some light on the question to see what kind of matter these unions call "tabular." Prices of the Chicago Typographical Union and of the Lima Typographical Union are practically the same in this respect. In Article 2 of the "Scale of Prices" of the former there is a distinction made between column matter and tabular matter. Column matter is

there defined as "matter made up in two or more columns not dependent on each other for their arrangement," while tabular matter is that containing three or four columns of figures and words, or either of them, without rules, and is paid for at a price and a half. It may be from this that the witness got his idea that it took more than two justifications to constitute tabular matter. But an inspection of the article just quoted from shows the union makes a distinction between "tabular" and "column" work. It is immaterial how many or how few columns are to be used to contain information, if it be tabular; and, if it be tabular, the price is fixed by statute. But regardless of this question, it appears that in the case at bar, there are three columns of matter, the third being merely the footings, but a column nevertheless, under the rules of the union to which the witness referred; so that by the rule of this union the matter in question is "price and a half," which phrase the witness used in the same sense as other witnesses used the term "tabular." So, by an analysis of the testimony of the witness under consideration, it appears he really does not differ from all the other witnesses.

It appears in evidence that the third column was not in the copy, and the appellee's witnesses who called the matter in question "straight matter," apparently proceeded on the theory that it would have been possible for the appellant to set up the matter in two columns and strictly according to the copy, instead of setting it up in three, which he did on his own motion. But even had it been thus set up, a preponderance of the evidence adduced at the hearing would compel the court to still call it "tabular matter," and this different method of composition could only have affected the number of squares to be charged for, and according to the evidence, only to a limited extent. But the appellee did not question the correctness of the number of squares.

The manner in which the report was set up was the manner in which such reports were customarily set up, that is, in three columns, the third being the footings. The appellee could have contracted with the appellant or could have stipulated as to the manner in which the report should have been set up, but they left the arrangement with the publisher, who was, perhaps, justified in following the customary manner or rule of composition in such matters.

The court has the utmost confidence in the honesty of the appellee's witnesses who gave it as their opinion that the Commissioners' Annual Report, when published as was the one in question, is not "tabular matter," but the court is in duty bound to reach a conclusion from the evidence adduced at the hearing, and evidence of facts when there is any such evidence. In judicial proceedings an expert opinion is advisory only, and dependent, when it is analyzed, upon the facts involved.

However widely the witnesses for the appellant differ from those for the appellee as to whether the matter is or is not "tabular," they all agree in their definition that "tabular matter" is matter set up in the form of a table, with figures one under the other, so as readily to exhibit to the eye the information to be conveyed, and which requires two or more justifications, except one of appellee's witnesses who said that it required more than two justifications to be price and a half matter. Included under this "price and a half matter" is tabular matter. But it appears from the evidence that there were two or more justifications required in the matter in question, there being three columns, so that, measured by the rule laid down by all the witnesses, the matter in question would be "tabular."

Now, the Century Dictionary defines "tabular" as "pertaining to a table; tabulated form;" which it further defines as a series of statements, a list of items; so that taking that definition, which the other dictionaries confirm, and taking all the testimony on the subject, every bit of it goes to show that this matter is "tabular matter."

The only other question involved arises on a construction of the section of the statutes quoted above. That section, while it names notices and proclamations, as well as advertisements, provides that it is only for tabular or rule work in the latter that 50 per cent. additional may be charged. The court was at first inclined to believe that the publication of the Commissioners' Annual Report was not an "advertisement" within the meaning of that section, but that it was a notice; but upon a thorough investigation the court is satisfied that the term "advertisement" is a generic term, and includes "notice," Anderson's Law Dictionary confirming this view, so that the Legislature, in using the word "advertisement" here, probably meant to include notice.

The judgment of the court is that appellant is entitled to recover against the appellee the sum of $396, instead of $264, for publishing 264 squares of the commissioners' annual report; and as to the remainder of the allowance made by the county commissioners the court makes no finding, it being apparently correct; the court finding that the matter in question is tabular, under the issues and the evidence which has been here adduced in court, and judgment is rendered accordingly.

*Layton & Son,* for the appellant.

*S. A. Haskins,* prosecuting attorney, for appellee.

---

## TITLE OF THE CITY OF CINCINNATI TO EGGLESTON AVENUE.